IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00715-FL

| | |
|---|---|
| **George Edmonds,** | |
| Plaintiff, | |
| v. | **Memorandum & Recommendation** |
| **Nancy A. Berryhill**, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff George Edmonds instituted this action on August 10, 2016, to challenge the denial of his application for social security income. Edmonds claims that the Administrative Law Judge ("ALJ") L. Raquel Bailey-Smith erred in (1) evaluating the medical opinion evidence and (2) finding that he had the residual functional capacity ("RFC") to perform a reduced range of medium work, which allowed him to perform his past relevant work. Both Edmonds and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 13, 16.

After reviewing the parties' arguments, the court has determined that ALJ Bailey-Smith reached the appropriate decision. The undersigned finds that Edmonds has failed to establish error in ALJ Bailey-Smith's evaluation of the medical opinion evidence. Additionally, substantial evidence supports her conclusion that Edmonds has the RFC to perform a reduced range of medium work. Thus, he can perform his past relevant work as the demands of such work fall within the parameters of his RFC. Therefore, the undersigned magistrate judge

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

recommends that the court deny Edmonds's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I.      **Background**

On October 10, 2012, Edmonds filed applications for disability insurance benefits and supplemental security income. In both applications, Edmonds alleged a disability that began on June 18, 2012.[3] After his claims were denied at the initial level and upon reconsideration, Edmonds appeared before ALJ Bailey-Smith for a hearing to determine whether he was entitled to benefits. ALJ Bailey-Smith determined Edmonds was not entitled to benefits because he was not disabled.  Tr. at 14–27.

ALJ Bailey-Smith found that Edmonds had the following severe impairments: medial collateral ligament ("MCL") tear, degenerative joint disease of the left knee, and bilateral carpal tunnel syndrome. *Id*. at 17. ALJ Bailey-Smith found that Edmonds's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 19. ALJ Bailey-Smith then determined that Edmonds had the RFC to perform medium work, with additional limitations. *Id*. at 20. He is limited to frequent stooping, kneeling, crouching, crawling, and balancing. *Id.* Edmonds can frequently climb ramps, stairs, ladders, ropes, and scaffolds. *Id.* He can occasionally push and pull with his bilateral, lower extremities and he can frequently handle and finger bilaterally. *Id*.

ALJ Bailey-Smith concluded that Edmonds is capable of performing his past relevant work as a janitor, kitchen helper, store laborer, retail sales clerk, and cashier checker. *Id*. at 25. ALJ Bailey-Smith also found that, considering his age, education, work experience, and RFC,

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

[3] Edmonds subsequently amended his alleged disability onset date to July 1, 2013. Tr. at 16.

there were jobs that existed in significant numbers in the national economy that Edmonds was capable of performing. *Id*. at 26. These include: industrial cleaner, laundry worker, and auto detailer. *Id*. at 26. Thus, ALJ Bailey-Smith found that Edmonds was not disabled. *Id*. at 27.

After unsuccessfully seeking review by the Appeals Council, Edmonds commenced this action on August 10, 2016. D.E. 5.

## II.  Analysis

### A.  Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.  Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part

404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.    Medical Background

Between 2012 and 2013, Edmonds received treatment at Fayetteville Veterans Administration Medical Center ("VAMC") for bilateral knee and leg pain, arthritis, peripheral vascular disease, lumbosacral, neuritis/radiculitis, arthropathy, claudication, depression, and knee pain. Tr. at 379–482, 555–75, 612–85. An MRI of Edmonds's left knee revealed an extensive medial meniscus tear, probable MCL strain, and bursitis, for which providers issued him a brace and a cane. *Id.* An examination of Edmonds's ;eft knee found swelling, tenderness, and reduced range of motion. *Id*. at 404. Treatment records from the following month note flexion of the left knee to 135 degrees, extension to 0 degrees, no knee effusion, and full muscle strength. *Id*. at 384. Records reflect similar findings in November of 2012 and again in January, March, and June 2013. *Id*. at 440, 500, 560, 632. Edmonds declined injections during this time. *Id*. at 384, 632. A Doppler ultrasound performed on Edmonds's knees revealed bilateral chronic venous insufficiency. *Id*.

Dr. Alan Cohen performed a consultative physical examination on Edmonds in December 2012. *Id*. at 483–88. He noted that x-rays of Edmonds's lumbar spine revealed posteriolisthesis.

*Id.* Examination showed steady gait, full muscle strength, abilities to pinch, grasp, and manipulate objects with his hands, and no effusion, range of motion deficits, instability, or deformity of the left knee. *Id.* Dr. Cohen opined that Edmonds was mildly impaired in his ability to stand and to lift, carry, and handle objects, and that he was moderately impaired ability to move about. *Id.*

Edmonds continued to receive treatment the following year at the Fayetteville VAMC for knee pain, degenerative joint disease, MCL tear, hypertension, foot pain, and bilateral carpal tunnel syndrome. *Id.* at 691–753, 761–807. In February 2014, Dr. Wenda McCutchan examined Edmonds. *Id.* at 695–96. She noted joint line tenderness in the left knee and a positive Phalen's sign but no ligament laxity, edema, or motor strength deficits. *Id.* at 695. Edmonds indicated he was not ready to pursue surgery. *Id.* at 696. Dr. Abu Asad Sharifuzzaman examined Edmonds later that month and noted tenderness in his left knee. *Id.* at 710–11. He opined that Edmonds could lift no more than 15 pounds. *Id.*

In April 2014, Dr. Wenda McCutchan, Edmonds's treating physician, completed a Medical Source Statement stating that he is unable to walk 200 feet without assistance or climb three 12-inch stairs without assistance. *Id.* at 754–60. She further asserted that he is unable to deal with an unexpected change in routine. *Id.* Dr. McCutchan also stated that Edmonds requires a cane, knee brace, and wrist braces for assistance with mobility. *Id.*

In May 2014, Edmonds reported to providers that his pain medication reduced his pain from seven out of ten to two out of ten, which allowed him to perform activities of daily living. *Id.* at 781. Two months later, Edmonds demonstrated positive Phalen's and Tinel's signs, tenderness in the elbows, and diffuse tenderness in the left knee. *Id.* at 761–62. He admitted that he had not been using his wrist braces at night. *Id.*

From October 2014 through November 2014, Chiropractic Plus treated Edmonds for bilateral carpal tunnel syndrome and an MCL tear. *Id*. at 808–19. Treatment notes reflect he had difficulty with walking, climbing, grasping, and holding, which impacted his ability to perform activities of daily living. *Id*.

At the hearing, Edmonds testified that he was able to get around by walking or taking the bus, and that he walked to do his grocery shopping and to go out to restaurants. *Id*. at 55. He also stated that he was able to walk without the cane and estimated he climbed up and down the stairs of his two-level townhouse six times per day. *Id.* at 68–69, 71. His stated he could shower, cook breakfast, grocery shop four times per month, do his laundry once per week, and occasionally go fishing. *Id*. at 58. Edmonds testified that he continued to perform seasonal work at Honey Baked Ham stocking the cooler with turkeys and hams. *Id*. at 60–61, 63.

### D.      Medical Opinion Evidence

Edmonds argues that ALJ Bailey-Smith erred in weighing the medical opinion evidence from Drs. Cohen and McCutchan. Edmonds also submits that Dr. McCutchan's opinion deserves greater weight because she was a treating provider, and that ALJ Bailey-Smith erred in assigning more weight to the opinions of Dr. Cohen, a consultative examiner. The Commissioner posits that the ALJ properly considered the opinion evidence. The undersigned finds that Edmonds has not established error by ALJ Bailey-Smith in her evaluation of the medical opinion evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating

medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(c)(4).

According to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions about disability are exclusively for the ALJ to make. *See* 20 C.F.R. § 404.1527(d)(1).

### a. Dr. Cohen

As noted above, Dr. Cohen's consultative exam of Edmonds noted he displayed a steady gait, full muscle strength, abilities to pinch, grasp and manipulate objects with his hands, and no effusion, range of motion deficits, instability, or deformity of the left knee. Tr. at 483–88. Dr. Cohen opined that Edmonds was mildly impaired in his ability to stand and to lift, carry, and handle objects, moderately impaired ability to move about, and he did not require an assistive device to ambulate. *Id.*

ALJ Bailey-Smith gave this assessment great weight. *Id.* at 24. She stated that Dr. Cohen's opinion was consistent not only with his own own clinical findings but also those of other providers. *Id.* In support of this finding, ALJ Bailey-Smith remarked that treatment noted reflected that Edmonds had a normal gait and he admitted to going out alone without his cane. *Id.* She further observed that he is able to use public transportation independently, shop, and clean. *Id.* Additionally, examination findings showed Edmonds maintained full strength in all of his extremities. *Id.*

Given ALJ Bailey-Smith's determination that Dr. Cohen's opinion found consistency and supportability in the record, she has properly explained her consideration of this assessment and the decision to afford it great weight. *See Craig v. Chater,* 76 F.3d 585, 589–90 (4th Cir. 1996) (ALJ is not required to give it "controlling weight" to a treating source). Edmonds has failed to demonstrate error and, consequently, his argument is subject to dismissal.

### b. Dr. McCutchan

In February 2014, Dr. McCutchan provided a Medical Source Statement in support of Edmonds's request for a disability placard. She opined that Edmonds was unable to walk 200 feet without assistance, climb three, 12-inch stairs without assistance, wait outside without

support for more than ten minutes, or deal with unexpected changes in routine. Tr. at 754–60. Dr. McCutchan also stated that Edmonds requires a cane, knee brace, and wrist braces for assistance with mobility. *Id*.

ALJ Bailey-Smith gave little weight to this opinion. *Id*. at 23–24. She concluded that Dr. McCutchan's assessed limitations were inconsistent with Edmonds statements of his ambulatory abilities, which included walking around his neighborhood and shopping without his cane. *Id*. Edmonds also stated that he walked up and down the stairs in his house several times per day. *Id*. at 21. ALJ Bailey-Smith further noted that Dr. McCutchan's statement was offered for the purpose of helping Edmonds obtain a parking placard and public transportation assistance, and that "[a] finding of disability for transportation purposes is not consistent with the rules and regulations of the [SSA]." *Id*. at 23.

Edmonds maintains that Dr. McCutchan's opinion is supported by the medical evidence and that the record contains no contrary evidence. As a treating provider, he argues that Dr. McCutchan had a unique perspective on his condition that the objective evidence alone cannot provide.

Edmonds's argument is unpersuasive. First, contrary to Edmonds's claim, Dr. McCutchan's February 2014 assessment lacks consistency with both the Edmonds's reported activities and the overall record. As ALJ Bailey-Smith observed, although Dr. McCutchan found that he could not walk more than 200 feet without assistance, Edmonds stated that he walked around his neighborhood and went shopping without using his cane. *Id*. at 24. While the record demonstrated some findings upon examination, such as crepitus and tenderness, it also consistently noted he had full motor strength. Dr. McCutchan's finding indicated tenderness and a positive McMurray test but also demonstrated no ligament laxity or edema. Moreover, ALJ

Bailey-Smith specifically noted that Dr. McCutchan's statement was offered in connection with disability for transportation purposes, very different from the disability inquiry at issue in his present claim.

Though the evidence supports some limitation, the record does not substantiate the degree of functional restriction offered by Dr. McCutchan. Accordingly, ALJ Bailey-Smith did not err in declining to accord more weight to this opinion.

Edmonds has failed to identify any error in ALJ Bailey-Smith's consideration of Dr. McCutchan's or Dr. Cohen's opinions. Although Edmonds argues that it was error to assign more weight to the opinion of a consultative examiner such as Dr. Cohen over that of a treating provider like Dr. McCutchan, this assertion is unpersuasive and finds no support in case law or the Regulations. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"): *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), (ALJs may rely on the opinions of non-examining physicians when such opinions find consistency with the whole of the record). For this reason, his argument on this issue lacks merit.

### E.      Residual Functional Capacity

Edmonds also contends that ALJ Bailey-Smith erred in finding that he had the RFC to perform a reduced range of medium work and concluding he was capable of performing his past relevant work. He also argues that the error in determining his RFC resulted in the

misapplication of the Medical-Vocational Guidelines ("Grids"). The Commissioner maintains, and the undersigned agrees, that substantial evidence supports ALJ Bailey-Smith's RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

As noted above, ALJ Bailey-Smith determined that Edmonds was capable of performing a reduced range of medium work. Tr. at 20. Edmonds contends, however, that he is incapable of this level of work because of his knee pain, his need to use a cane, and the problems he has using his hands. He contends that he can stand or walk for only two hours and can sit for only 45 minutes. He claims that he must walk slowly as he often stumbles. Edmonds point out that the VA prescribed him a cane, a knee brace, and support hose. Edmonds also states that he must be careful lifting items, as numbness from his CTS causes him to drop things. While medication has helped his pain somewhat, Edmonds alleges that the record documents that he continues to experience pain and swelling.

ALJ Bailey-Smith concluded that while he had medically-determinable impairments that could produce the symptoms he alleged, Edmonds statements about the intensity, persistence, or limiting effects of those symptoms was not fully credible. *Id*. at 21. Other substantial evidence in the record supports such a finding and discredits Edmonds's claims of the extent of his limitations.

First, Edmonds alleged limitations in walking and standing are discredited by his treatment records. The evidence shows that he had tenderness and swelling following his 2012 knee injury, but thereafter his effusion improved, his strength was normal or only slightly decreased, he had full strength, and his gait was normal or slightly antalgic. ALJ Bailey-Smith also noted that Edmonds reported walking a lot. *Id.* She further observed that he used conservative modalities, such as over-the-counter medication, to treat his pain. *Id.* He reported that his pain symptoms decreased, from seven out of ten to two out of ten, when he took this medication. *Id*. Edmonds also declined more aggressive treatments, such as surgery or injections, offered by his providers. *Id*. at 22.

The record also undermines Edmonds alleged difficulties with lifting and gripping. The evidence reflects that he displayed full grip strength and he could pinch, grasp, and manipulate objects. *Id.* ALJ Bailey-Smith remarked that Edmonds performed seasonal work lifting turkeys and hams, for which he would use his hands . *Id*. at 24.

Edmonds contends that his need for a cane is established in the record. In addition to his statements regarding his alleged limitations, he notes Dr. McCutchan stated that he required a cane for mobility and the VA prescribed the cane to him. He also argues that his need for a cane is incompatible with his past work. He thus contends that ALJ Bailey-Smith erred in failing to

include the use of a cane in her RFC determination and in finding, at step four, that he could perform his past relevant work.

Substantial evidence supports ALJ Bailey-Smith finding that Edmonds's use of a cane is not medically required. His allegation that he needs an assistive device is inconsistent with the evidence on the record. Edmonds began using the cane before his knee condition was evaluated or treated. *Id*. at 22. He used the cane incorrectly and admitted that he would walk without it. *Id*. Edmonds climbed stairs in his house several times a day and performed chores like shopping and vacuuming, activities which ALJ Bailey-Smith found were inconsistent with the need for an assistive device. *Id*. Treatment records described his gait as minimally antalgic. *Id*. Edmonds cites only one treatment record during the relevant period—an August 2013 notation by a nurse that he walked with a cane at his checkup—that addresses his use of a cane. In sum, this evidence casts doubt on Edmonds's assertion that he requires a cane.

ALJ Bailey-Smith considered whether Edmonds required a cane but concluded the evidence did not establish that it was medically necessary. As there is substantial evidence supporting ALJ Bailey-Smith's finding that Edmonds could ambulate without a cane, the court finds no error omitting the use of an assistive device from the RFC determination.

Edmonds also maintains that it is error for ALJ Bailey-Smith to find that that his reported activities of daily living suggest he is capable of medium work on a sustained basis of eight hours per day, five days per week. Edmonds asserts that his activities of daily living have become limited. However, as the Commissioner points out, ALJ Bailey-Smith's consideration of his activities of daily living is appropriate under the Regulations. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (an ALJ should consider whether an opinion is consistent with the

entire record). Edmonds's reports of his daily living activities underscore his allegations of debilitating symptoms.

Because his statements of the extent of his limitations were not fully credible and because he has not established that his use of a cane is medically required, Edmonds has not shown that ALJ Bailey-Smith erred in her RFC determination. Additionally, as Edmonds premises his challenge to the step four finding on his unmeritorious argument regarding the RFC, the undersigned cannot find error in the conclusion that he can perform his past relevant work.

In sum, the longitudinal record casts doubt on Edmonds's assertion that he is more restricted in his functioning than the RFC determined. Edmonds has failed to show that additional restrictions were well-supported but omitted from the RFC. Although his statements alleged further limitations, as noted above, ALJ Bailey-Smith concluded that he was not fully credible. As that finding is supported by substantial evidence and due deference from the court, the present argument must be rejected.[4]

## III.    Conclusion

For the forgoing reasons, the court recommends that the court deny Edmonds's Motion for Judgment on the Pleadings (D.E. 13), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 16), and affirm the Commissioner's determination.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the

---

[4] Because Edmonds has failed to demonstrate error in the RFC determination, the undersigned cannot conclude that ALJ Bailey-Smith's applied the incorrect Grid Rule under the Medical-Vocational Guidelines.

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** ***See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: August 10, 2017

_Robert T Numbers II_
_____
Robert T. Numbers, II
United States Magistrate Judge